IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SHERRY LEANNE MCCALL,              )
                                   )
                Plaintiff,         )
                                   )
        v.                         )        1:17CV1092
                                   )
NANCY A. BERRYHILL,                )
Acting Commissioner of Social      )
Security,                          )
                                   )
                Defendant.         )


**<u>MEMORANDUM OPINION AND ORDER</u>**

**OSTEEN, JR., District Judge**

      Plaintiff, Sherry Leanne McCall, brought this action under

the Social Security Act (the "Act") to obtain judicial review of

a final decision of Defendant, the Acting Commissioner of Social

Security, denying Plaintiff's claims for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI")

benefits. (Complaint ("Compl.") (Doc. 1).)[1] The court has before

it the certified administrative record (cited herein as "Tr.

___"), as well as the parties' cross-motions for judgment,

_____

      [1] In her pro se Complaint, Plaintiff marked only DIB when
instructed to "check the type of claim you are filing," (id. at
2). (See id. at 2-3.) Following the appearance of counsel on her
behalf, (see Doc. 9), however, Plaintiff clarified that her
claim includes SSI as well, (see, e.g., Doc. 11 at 1).
Defendant likewise treats Plaintiff's claim as encompassing both
DIB and SSI benefits. (See, e.g., Doc. 14 at 4-5 (discussing
criteria for DIB and SSI).)

(Docs. 10, 13; see also Pl.'s Brief ("Pl.'s Mem.") (Doc. 11); Def.'s Mem. in Supp. of Mot. for J. on the Pleadings ("Def.'s Mem.") (Doc. 14).) For the reasons that follow, the court will enter judgment for Defendant.

## I.  PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI. (Tr. 258-70.) Upon denial of those applications initially, (Tr. 171-80), and on reconsideration, (Tr. 186-05), she requested a hearing de novo before an Administrative Law Judge (the "ALJ"), (see Tr. 211-25). Plaintiff, her attorney, and a vocational expert (the "VE") attended the hearing. (See Tr. 35-50.) The ALJ subsequently ruled Plaintiff not disabled under the Act. (Tr. 16-34.) The Appeals Council denied her request for review, (Tr. 1-6), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1.  [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2013.
>
> 2.  [Plaintiff] has not engaged in substantial gainful activity since January 25, 2013, the alleged onset date.
>
> 3.  [Plaintiff] has the following severe impairments: history of motor vehicle accident, degenerative disc disease, radiculopathy, neuropathy, depression, post-traumatic stress disorder, and panic disorder.
>
>     . . . .

4.   [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CPR Part 404, Subpart P, Appendix 1.

. . . .

5.   . . . [Plaintiff] has the residual functional capacity [(at times, the "RFC")] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] avoid [sic] concentrated exposure to hazards such as unprotected heights or moving machinery. [Plaintiff] should not climb ladders, ropes, or scaffolds but could occasionally stoop.  She could frequently climb ramps and stairs, kneel, crouch, and crawl. There would be no limitations with balance. She could frequently perform handling and fingering with the left hand. Additionally, [Plaintiff] could remember and carry out at least simple instructions while performing simple, routine, repetitive tasks. [Plaintiff] should not perform jobs with a production quota. She can maintain concentration for at least two hours at a time. [Plaintiff] could respond appropriately to routine work settings, but no highly stressful situations. She could have infrequent contact with the public and occasional contact with supervisors and coworkers.

. . . .

6.   [Plaintiff] is unable to perform any past relevant work.

. . . .

10.  Considering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . . .

11.  [Plaintiff] has not been under a disability, as defined in the . . . Act, from January 25, 2013, through the date of this decision.

(Tr. 21-28 (bold font and parenthetical citations omitted).)

## II. **DISCUSSION**

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under this extremely limited review standard.

### A. **Standard of Review**

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (brackets and internal quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to

direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (brackets and internal quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process (the "SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of

---

[2] The "Act comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The [SSI] Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (citations omitted).

Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (citation omitted).

[RFC]." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both . . . [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry her "evidentiary burden of proving that [the claimant] remains able to work other jobs available in

---

[4] The "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require the RFC to reflect the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (emphasis and internal quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. The "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[5]

**B.   Assignments of Error**

Plaintiff asserts that the ALJ "erred in the weight afforded to the medical opinion evidence," (Doc. 10 at 1), and also failed to "offer[] legally sufficient reasons supported by substantial evidence in the record for rejecting Plaintiff's symptom reports." (<u>Id.</u>). Plaintiff further asserts that "remand for payment of benefits is the appropriate remedy." (<u>Id.</u>) Defendant contends otherwise and urges that substantial evidence supports the ALJ's findings. (<u>See</u> Doc. 14.)

**1.   Opinion Evidence**

Plaintiff first contends that the ALJ erred in his consideration of the medical opinions of Dr. William A. Hensel, Dr. Ralph C. Bobbitt, Dr. Robert N. Pyle, and Dr. Ellen Huffman-Zechman. (<u>See</u> Pl.'s Mem. (Doc. 11) at 4-17.) In particular, Plaintiff maintains that "[t]he ALJ should have afforded greater

---

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant at step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

weight to Dr. Hensel's [2014] opinion," (id. at 8), in part
because the ALJ allegedly failed to consider the "factors
required by 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)," (id. at
9), in evaluating Dr. Hensel's opinion. (See id. at 4-12.) In
addition, she contends that "[t]he ALJ's rejection of Dr.
Bobbitt's opinion failed to be legally sufficient or based on
substantial evidence in the record." (Id. at 14.) Finally, she
faults the ALJ for "afford[ing] the non-examining source
opinions 'great' weight." (Id. at 15; see id. at 14-16.)
Plaintiff's arguments lack merit.

### (a)  Applicable Standards

Plaintiff filed her claim before March 27, 2017, (see Tr.
258-70), rendering it subject to the treating physician rule,
see 20 C.F.R. § 404.1527. Under this rule, an ALJ generally must
afford controlling weight to the opinion of a treating source as
to the nature and severity of a claimant's impairment, on the
theory that treating sources "provide a detailed, longitudinal
picture of [the claimant's] medical impairment(s) and may bring
a unique perspective to the medical evidence that cannot be
obtained from the objective medical findings alone or from
reports of individual examinations, such as consultative
examinations or brief hospitalizations." 20 C.F.R.
§ 404.1527(c)(2). The rule also recognizes, however, that not
all treating sources or treating source opinions deserve such

deference. See Johnson v. Barnhart, 434 F.3d 650, 654 n.5 (4th Cir. 2005) ("The ALJ is not required in all cases to give the treating physician's opinion greater weight than other evidence . . . .").

To begin with, the nature and extent of each treatment relationship may temper the weight afforded. 20 C.F.R. § 404.1527(c)(2)(ii). Further, a treating source's opinion controls only if well-supported by "medical signs and laboratory findings" and consistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590; accord Mastro, 270 F.3d at 178. Finally, opinions regarding issues reserved to the Commissioner, regardless of source, do not receive controlling weight. See 20 C.F.R. § 404.1527(d); see also Morgan v. Barnhart, 142 F. App'x 716, 722 (4th Cir. 2005) ("While the ALJ must give a treating physician's medical opinions special weight in certain circumstances, the ALJ is under no obligation to give a treating physician's legal conclusions any heightened evidentiary value." emphasis in original; citation omitted)).

Regardless of the source, however, the ALJ must "evaluate every medical opinion [the ALJ] receive[s]" and sufficiently

indicate and explain the weight that the ALJ affords such

opinion. 20 C.F.R. § 404.1527(c); see Social Security Ruling 96–

5p, Medical Source Opinions on Issues Reserved to the

Commissioner, 1996 WL 374183, at *5 (July 2, 1996) (the "SSR 96-

5p") (noting that ALJs "must weigh medical source

statements . . . [and] provid[e] appropriate explanations for

accepting or rejecting such opinions"). Similarly, the ALJ

cannot "simply . . . ignore a treating physician's legal

conclusions, but must instead 'evaluate all the evidence in the

case record to determine the extent to which the [treating

physician's legal conclusion] is supported by the record.'"

Morgan, 142 F. App'x at 722 (alteration in original) (quoting

SSR 96-5p, 1996 WL 374183, at *3). However, "[a]s a general

rule, [courts] have held that an ALJ's failure to adequately

explain his factual findings is not a sufficient reason for

setting aside an administrative finding where the record

supports the overall determination." Scott ex rel. Scott v.

Astrue, 529 F.3d 818, 822 (8th Cir. 2008) (internal quotation

marks omitted); see also Ngarurih v. Ashcroft, 371 F.3d 182, 190

n.8 (4th Cir. 2004) ("While the general rule is that an

administrative order cannot be upheld unless the grounds upon

which the agency acted in exercising its powers were those upon

which its action can be sustained, reversal is not required when

the alleged error clearly had no bearing on the procedure used

or the substance of the decision reached." (citation and internal quotation marks omitted)); Stewart v. Apfel, No. 98-1785, 1999 WL 485862, at *5 (4th Cir. 1999) (concluding that, although "the ALJ's report completely fail[ed] to mention the evaluation by [a medical source]" and "the ALJ . . . was not as thorough as he could have been," the district court properly concluded that substantial evidence supported the ALJ's decision and the ALJ adequately "explained why he came to the conclusion that he did"); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

### (b)  Dr. Hensel's Opinion

As an initial matter, Plaintiff maintains that the ALJ failed to consider the "factors required by 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)" in evaluating Dr. Hensel's opinion. (Pl.'s Mem. (Doc. 11) at 9.) However, the ALJ's failure

to explicitly address each of the factors of 20 C.F.R.

§ 404.1527(c) constitutes at most harmless error.[6]

In rendering his decision, the ALJ stated that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Tr. 24.) Thus, in assigning "limited weight" to Dr. Hensel's opinion, (Tr. 26), the ALJ implicitly considered the 20 C.F.R. § 404.1527(c) and 20 C.F.R. § 416.927(c) factors (i.e., examining relationship, treatment relationship, including "[l]ength of the treatment relationship and the frequency of examination," supportability, consistency, specialization, and any "[o]ther factors . . . . which tend to support or contradict

---

[6] "The federal 'harmless-error' statute, now codified at 28 U.S.C. § 2111, tells courts to review cases for errors of law 'without regard to errors' that do not affect the parties' 'substantial rights.'" Shinseki v. Sanders, 556 U.S. 396, 407 (2009). Moreover, the United States Supreme "Court has said that the party that seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted." Id. at 409 (internal quotation marks omitted). "[C]ourts have correlated review of ordinary administrative proceedings to appellate review of civil cases in this respect. Consequently, the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Id. (citing with approval, inter alia, Nelson v. Apfel, 131 F.3d 1228 (7th Cir. 1997), a Social Security case). Consistent with Sanders, the United States Court of Appeals for the Fourth Circuit has repeatedly recognized the applicability of the harmless error doctrine in the Social Security context. See Mascio v. Colvin, 780 F.3d 632, 636-37, 639 (4th Cir. 2015); Garner v. Astrue, 436 F. App'x 224, 226 n.* (4th Cir. 2011); Morgan, 142 F. App'x at 723; Camp v. Massanari, 22 F. App'x 311, 311 (4th Cir. 2001).

the medical opinion," 20 C.F.R. §§ 404.1527(c), 416.927(c)).
See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th
Cir. 2014) ("[O]ur general practice, which we see no reason to
depart from here, is to take a lower tribunal at its word when
it declares that it has considered a matter[.]" (initial
alteration in original) (quoting Hackett v. Barnhart, 395 F.3d
1168, 1173 (10th Cir. 2005))).

    Moreover, the ALJ's discussion of the medical evidence and
Dr. Hensel's opinions confirms that the ALJ considered these
factors. For instance, the ALJ noted that "[a] bone scan in 2007
was essentially normal. Physical examination was also normal.
Objective imaging revealed some degenerative changes at L5-S1
with bilateral facet hypertrophy (Exhibit B2F)." (Tr. 24.) The
Exhibit B2F treatment notes from August 21, 2007, state that
"[Plaintiff] is going to see Dr. Henchel [sic] her private
doctor on Friday." (Tr. 362.) Similarly, the ALJ relied on
"Exhibit B4F" in finding that, inter alia, "EMG studies in
August 2010 revealed left peroneal neuropathy in the fibular
head. However, physical examination in September 2010 showed
little abnormalities and MRI of the lumbar spine with x-rays of
the hip revealed nothing more than some spondylosis in the
lumbar area." (Tr. 24.) The Exhibit B4F treatment notes from Dr.
Kirsteins' referenced September 2010 electrodiagnostic
examination state, in part, that "[Plaintiff] has had back

pain . . . since 2006, has been seen by her primary care physician over several years for this, but also has been seeking care through the [emergency department (the "ED")]. [Dr. Kirsteins] reviewed records from the ED as well as imagining study as well as Dr. Hensel's office notes." (Tr. 483.) These treatment notes further reflect that after an ED visit in February 28, 2010, "[Plaintiff] followed up with Dr. Hensel." (Id.) Finally, the September 2010 records reflect that "[Dr. Kirsteins] will defer medication management to Dr. Hensel." (Tr. 484.)

In addition, the ALJ specifically noted Dr. Hensel's role as "a treating physician." (Tr. 26.) The ALJ further acknowledged Dr. Hensel's January 2011 opinion, (see id.), which "state[s] that [Dr. Hensel is Plaintiff's] family physician and ha[s] cared for [Plaintiff] for years. [Dr. Hensel's] opinions are based on this long-term doctor/patient relationship." (Tr. 503.) The ALJ likewise specifically discussed Dr. Hensel's September 2014 opinion, (see Tr. 26), which reflected that, as of 2012, "[Dr. Hensel] ha[d] been [Plaintiff's] family physician for at least 15 years," (Tr. 626). Finally, in making his medical findings, the ALJ cited to, inter alia, "Exhibits B9F, B10F, & B14F," "Exhibit B18F," and "Exhibit[] B16F." (Tr. 25.) These exhibits contain treatment records from Dr. Hensel spanning from February 20, 2012, to September 21, 2016,

detailing "Dr. Hensel's . . . more than 30 appointments with Plaintiff that appear in the record," (Pl.'s Mem. (Doc. 11), at 11; see also id. at 9-10 (citing relevant transcript pages)). (See Tr. 522-580, 597-614, 624-627, 643-668.)

Thus, the record reflects that the ALJ "consider[ed] the length and treatment relationship between Plaintiff and Dr. Hensel and the frequency with Dr. Hensel had examined Plaintiff," (Pl.'s Mem. (Doc. 11) at 9), as well as "the nature and extent of the treatment relationship between Plaintiff and Dr. Hensel," (id. at 10). In addition, the ALJ explicitly considered the consistency of Dr. Hensel's 2014 opinion with the record, finding it "inconsistent with the record as a whole and with Dr. Hensel's own objective findings. Indeed, [Dr. Hensel] reported that [Plaintiff] was doing well when compliant with medication." (Tr. 26.) Finally, as to supportability, Dr. Hensel's 2014 opinion concedes that the "reasons for [his] conclusion . . . largely . . . rely on [Plaintiff's] reported symptoms." (Tr. 620.) Thus, the ALJ's failure to expressly articulate each of the 20 C.F.R. § 404.1527(c) and 20 C.F.R. § 416.927(c) factors qualifies at most as harmless error.

Moreover, the ALJ did not reversibly err in affording Dr. Hensel's opinion "limited weight." (Tr. 26.) See Johnson, 434 F.3d at 654 n.5 (explaining that "the ALJ holds the discretion to give less weight to the testimony of a treating

physician in the face of persuasive contrary evidence" (internal
quotation marks and brackets omitted)). To begin, the 2011
opinion predated Plaintiff's alleged 2013 onset date and opines
on an issue reserved for the Commissioner. (See Tr. 503 ("I
believe you are physically and emotionally unable to work. I do
not think that you can perform any job at present with your
ongoing severe back and hip pain. . . . I cannot imagine a job
which you could tolerate, nor can I imagine anyone willing to
hire you based on your limitations.").) Furthermore, substantial
evidence supports the ALJ's determination that Dr. Hensel's
September 2014 opinion was "inconsistent with the record as a
whole and with Dr. Hensel's own objective findings." (Tr. 26.)
In support of this finding, the ALJ noted that Dr. Hensel
"reported that [Plaintiff] was doing well when compliant with
medication." (Id.) The ALJ further observed that:

> Dr. Hensel . . . noted in January 2014 that
> [Plaintiff] continued to allege unrelenting back pain
> and diagnosed [Plaintiff] with chronic pain syndrome.
> However, physical examination was essentially normal
> except for subjective tenderness in the lumbar spinal
> muscles (Exhibits B9F, B10F, & B14F). Indeed, in April
> 2014 Dr. Hensel noted that [Plaintiff] was stable on
> her medication and "doing pretty well" (Exhibit B18F).

(Tr. 25.)

More specifically, Exhibit B18F contains an April 2015
report from Dr. Hensel indicating that:

> [Plaintiff] is doing pretty well for her. Marriage has
> done great things for her — especially as long as her

- 18 -

military husband is not deployed. Apparently, he has
seven more years before he is eligible for full
retirement. [Plaintiff] does anticipate that he will
be away for significant stretches of time in the next
1-2 years.

Chronic pain is stable on meds[.]
Personality disorder/PTSD with anger and anxiety is
stable. She only needs to take the low dose
haloperidol infrequently.
She is not interested in tobacco cessation.

(Tr. 644 (line breaks and spacing in original).) In addition,

Exhibit B10F contains April 2014 treatment notes from Dr. Hensel

that state:

[Plaintiff] is actually better than average
today. She is still depressed/irritated over the
denial of her disability. She is appealing. Chronic
back pain continues. Worried that her weight is up.
Finances are still terrible. Those are the typical
negative parts of her life.

On the good side, her sig[nificant] other is due
to return in June after a long tour in Afg[h]anistan.
Her youngest daughter is marrying a good man. Both her
kids seem to be settled into an OK adulthood.

(Tr. 578.) Moreover, Dr. Hensel's treatment notes repeatedly

indicate that Plaintiff's medications keep her "stable," (Tr.

538, 644), "functioning," (Tr. 659; accord Tr. 643 ("She remains

functional with her pain meds.")), and "active," (Tr. 657).[7] (See

also Tr. 525, 613, 661, 667.) In this regard, it bears

particular emphasis that Dr. Hensel found that "[Plaintiff]

---

[7] Other doctors likewise confirmed the beneficial effect of
Plaintiff's medications. (See, e.g., Tr. 483 ("Pain improves with
heat, medications. Relief from meds is fair.").)

remains functional with her pain meds" and possessed a "mostly
normal" gait on September 19, 2014, (Tr. 643), only five days
before issuing his 2014 opinion, (see Tr. 623), which presented
her situation as "[p]oorly control[l]ed on current meds."
(Tr. 618.)

In addition, Dr. Hensel's records reflect improvements over
the relevant period. For instance, in April 2013, Dr. Hensel
stated that "[Plaintiff wa]s in better spirits than usual" and,
from an objective perspective, although she still experienced
"paraspinous muscle spasm," her "[g]eneral movement [wa]s
better." (Tr. 597.) By way of additional example, in January
2016, Dr. Hensel reported that:

> [Plaintiff] is here for her q3 [sic] month back
> pain, encounter for chronic pain management. She has
> done well in 2015. The good thing is that she got
> married to long term boyfriend, Freddie. He is
> military and was stationed in the US much of the year.
> 2016 will be more difficult. Freddie will be in
> Afghanistan for the entire year. He left Jan 1.
>
> She is more upbeat. Her sister is doing better.
> She plans to start exercising with her daughter. She
> is not very active. Pain meds help her remain active.

(Tr. 657.) Two months later, Dr. Hensel indicated that
"[Plaintiff was m]ainly here for a refill of her chronic pain
meds for her low back and neck pain. These pain meds keep her
functioning. She [wa]s stable," although her "[n]eck pain [wa]s
worse for the past week. Vague radiation to tricep area of both
arms. No trauma." (Tr. 659.) Nevertheless, the physical

examination from that visit revealed "[n]ormal strength and sensation in both upper extremities." (Id.) As a final example, on September 21, 2016, he reported:

> Brief visit, check chronic pain and refill meds. Stable. Comes in with sister. [Plaintiff] is nicely calming down with each passing year and handling life stressors much better. She has held tight to her anger for several years. She is in fine spirits today: Her husband comes home in 3 days from a one year tour in Afghanistan. She copes better when he is home.

> Pain is at baseline. I plan no change in her meds. Psych is better than baseline due to maturing, imminent return of husband and the fact that she is one of the more sane, composed members of her family (sister has several more issues.)

> Refuses flu shots despite my reassurances that it does not cause the flu[.]

(Tr. 667 (line breaks and spacing in original).) At that visit, the physical exam revealed that Plaintiff's "[a]ffect [was] good," she had a "[g]ood, normal gait," notwithstanding her "[m]idline back pain with mild paraspinous muscle tenderness," and she possessed "[n]ormal bilateral leg strength." (Tr. 668.)

Under the circumstances, Plaintiff has not shown that the ALJ committed reversible error in his assessment of Dr. Hensel's opinion(s). See Fitzgerald v. Colvin, No. 2:12-CV-78-D, 2013 WL 6178563, at *5 (E.D.N.C. Nov. 25, 2013) ("To the extent [the plaintiff] alleges that the ALJ should have more thoroughly explained the weight given to [certain medical source] opinions, a district court must affirm the decision of an ALJ who 'was not

as thorough as he could have been' if it finds, after reviewing the record as a whole, that substantial evidence supports the decision." (quoting Stewart, 1999 WL 485862, at *5)); see also Craig, 76 F.3d at 590.

### (c) **Dr. Bobbitt's Opinion**

Plaintiff further faults the ALJ for only according Dr. Bobbitt's opinion "some weight." (Pl.'s Mem. (Doc. 11) at 13-14.) More specifically, the ALJ stated:

> Dr. Bobbitt opined that [Plaintiff] could stand and/or walk for 4 hours during an 8-hour day, sit for 4 hours during an 8-hour day, and lift and/or carry 20 pounds occasionally and 10 pounds frequently. She could perform postural movements occasionally and use her left side frequently for manipulative activities. She should not work at unprotected heights or around moving machinery (Exhibit B11F). [The ALJ] f[ou]nd this opinion to be generally consistent with the record as a whole. [The ALJ] agree[d] with Dr. Bobbitt's findings except with regards to [Plaintiff's] ability to stand, walk, and sit. [Plaintiff's] reported daily activities and objective findings do not support his more restrictive findings. Therefore, [The ALJ] g[a]ve this opinion some weight.

(Tr. 26.) Plaintiff criticizes the ALJ for "not provid[ing] any explanation of which objective findings were inconsistent with Dr. Bobbitt's opinion" or "of any daily activities that undermined Dr. Bobbitt's opinion." (Pl.'s Mem. (Doc. 11) at 14.)

However, the ALJ had earlier noted:

> In an agency questionnaire, [Plaintiff] stated that she watched television and read, and prepared meals. She provided care for a family pet and had no difficulty performing self-care activities. She was able to carry out household chores. [Plaintiff]

> reported being able to drive a car, shop in stores,
> and manage household finances. [Plaintiff] stated that
> she did not deal with stress or changes in routine
> well (Exhibit B3E).

(Tr. 24; see Tr. 297-04 (agency questionnaire).) Thereafter, the

ALJ elaborated, inter alia, that

> objective imaging studies continued to show only mild
> degenerative changes without evidence of stenosis or
> severe herniation. Indeed, physical findings
> subsequent to a motor vehicle accident were
> essentially normal except for a fractured finger that
> responded well to treatment. [Plaintiff's] treating
> physician noted that she responded well to
> conservative treatment and was stable on medication.
> [Plaintiff] was able to provide care for family pets,
> prepare meals, and carry out light household chores
> occasionally.

(Tr. 27.) Accordingly, the ALJ did "provide an[] explanation of

[relevant] objective findings" and "daily activities," (Pl.'s

Mem. (Doc. 11) at 14), that undermined Dr. Bobbitt's opinion.

Moreover, substantial evidence supports the ALJ's finding.

For instance, as discussed above, Dr. Hensel's records

repeatedly reflected that medication kept Plaintiff stable and

functioning, with normal objective examination results.

Further, as the state consulting agency examiner — to whose

opinion the ALJ ascribed "great weight," (Tr. 26) — noted, the

objective findings from Dr. Bobbitt's evaluation of Plaintiff do

not support his sit/stand limitation. (See Tr. 160.) In

particular, at Dr. Bobbitt's examination of Plaintiff, she

possessed "5/5 motor strength in the right lower extremity[,]

4/5 motor strength in the left lower extremity[, and a]dequate muscle bulk and tone." (Tr. 586.) In addition, the record reflects that Plaintiff "do[es] most of the [household] cleaning," aside from the "mopping and sweeping," "cooks dinner daily," goes to "doctors' appointment[s] regularly and goes to Walmart once a month," regularly visits with friends and family, walks her dog, "go[es] on Facebook" and the computer, (Tr. 591), including "engag[ing] in activities on the Internet for up to one and a half hours" and watching "approximately 2 hours of television," for "short periods at a time," on "a typical day," (Tr. 583), and also "cook[s] breakfast," (Tr. 44). These activities provide substantial evidence in support of the ALJ's finding regarding Dr. Bobbitt's sit/stand limitation. Accordingly, Plaintiff fails to establish that the ALJ reversibly erred in according "some weight" to Dr. Bobbitt's opinion. See Fitzgerald, 2013 WL 6178563, at *5.

Furthermore, contrary to Plaintiff's contention, (see Pl.'s Mem. (Doc. 11) at 16-17), "a finding of disability would [not] be required," (id. at 17), if the ALJ had credited Dr. Bobbitt's opinion that "Plaintiff would be capable of, at best, sitting for 4 hours in an 8-hour workday and standing/walking for 4 hours in an 8-hour workday." (Id.) In Plaintiff's view, the even split between walking and sitting limitations "are inconsistent with" the ability to do either "light work," which "is

characterized by sitting for 2 hours and standing/walking for 6 hours," or sedentary work, which "is characterized by the ability to stand and walk for 2 hours." (Id.) As such, Plaintiff maintains, "a finding of disability would be required" if the ALJ accepted Dr. Bobbitt's limitations. (Id.) However, "that argument rests on the faulty premise that all light work requires six hours of standing or walking in an eight-hour workday," when in fact an ALJ can craft an RFC for "a reduced range of light work . . . involving the lifting/carrying/ pushing/pulling requirements of light work but entailing a maximum of only four hours of standing and/or walking in a workday." Pack v. Berryhill, No. 1:18CV191, 2019 WL 1099707, at *4 (M.D.N.C. Mar. 8, 2019) (rejecting challenge to RFC that limited the plaintiff to four hours of standing and walking during an eight-hour workday). Accordingly, Plaintiff's contention that "[i]f the ALJ had properly credited the opinions of Dr. Hensel and Dr. Bobbitt and accommodated the limitations that they assessed in to the residual functional capacity, Plaintiff would be limited to, at best, less than the full range of sedentary work," and "[a] finding of disability would be required," (Pl.'s Mem. (Doc. 11) at 21), lacks merit, rendering "remand for payment of benefits . . . [in]appropriate." (Id.)

In sum, therefore, Plaintiff's challenge to the ALJ's assessment of Dr. Bobbitt's opinion fails to justify remand.

## (d)  State Consulting Examiners' Opinions

Finally, Plaintiff faults the ALJ for "afford[ing] the non-examining source opinions 'great' weight," (Pl.'s Mem. (Doc. 11) at 15 (citing Tr. 26)), as, in Plaintiff's view, "the record as a whole was inconsistent with the opinions of the non-examining sources." (Id. at 16.)[8] In particular, Plaintiff maintains that the state agency's consulting physicians (1) "provided long summaries of the medical opinion evidence but provided no

_____

[8] In actuality, the ALJ afforded the March 2015 opinion of Dr. Ellen Huffman-Zechman "great weight," (Tr. 26 ("The State agency's consulting physician evaluated [Plaintiff's] record as it stood on March 17, 2015 . . . .  [The ALJ] f[ou]nd the State agency's opinion well supported by the record and g[a]ve it great weight. This opinion is well supported by medically acceptable clinical findings and is consistent with the other substantial evidence in [Plaintiff's] case record." (citing "Exhibit B7A"))), but did not separately assess the August 2014 opinion of Dr. Robert Pyle. (See Tr. 26-27.) Plaintiff raises no argument regarding this approach, (see Pl.'s Mem. (Doc. 11) at 14-16), and given that "Ellen Huffman-Zechman, M.D., offered the same opinion at the reconsideration level on March 17, 2015," (id. at 15), as Dr. Pyle did in his assessment of "Plaintiff's [RFC] at the initial level on August 27, 2014," (id. at 14), the ALJ's failure to specifically discuss Dr. Pyle's opinions constitutes harmless error. See Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) ("The ALJ considered Dr. Scublinsky's 2001 report, and Dr. Scublinsky's 2002 report, which the ALJ overlooked, was largely identical to it. Because the report that the ALJ overlooked was not significantly more favorable to Petitioner, we find no reasonable likelihood that her consideration of the same doctor's 2002 report would have changed the ALJ's determination that Petitioner was not disabled during the closed period. Accordingly, remand for consideration of the improperly excluded report is unnecessary."); see also Stewart, 1999 WL 485862, at *5.

reasons for determining that Plaintiff would be less limited

than assessed by Dr. Hensel and Dr. Bobbitt" and (2) further

failed to "consider the 2012 or 2014 opinions of Dr. Hensel."

(Id.) These arguments miss their mark.

To begin, the relevant state agency opinion did consider

Dr. Hensel's 2012 and 2014 opinions. (See, e.g., Tr. 156

(detailing "letter/from PCP/Dr. Hensel dated 10/10/12 and RFC

dated 9/24/14[]"); Tr. 157 (same); Tr. 158 (evaluating Dr.

Hensel's opinion); Tr. 162 (same).)[9] In addition, the agency's

opinion explicitly detailed its reasons for discounting the

opinions of Dr. Bobbitt and Dr. Hansel. For instance, it

specified that it "afforded some but not great weight" to

Dr. Bobbitt's opinion, as the "ability to sit and stand up to 4

h[ou]rs [was] not supported b[y] 5/5 RLE and 4/5 LLE with

adequate bulk and tone and [was] based on a snapshot performance

on a single exam," (Tr. 160; see also Tr. 586). As to Dr.

Hensel, it noted his report on September 19, 2014, that

Plaintiff was "obviously happier (found love and happiness)" and

"remains functional with pain meds." (Tr. 158.) It further

noted: "Same source opines on 9/24/14 that emotional factors

_____

    [9] Further, Dr. Pyle's opinions predate Dr. Hensel's 2014
opinion (which contains the letter constituting his 2012
opinion, (see Tr. 615-17)). (Cf., e.g., Tr. 123 (bearing date of
August 27, 2014), with Tr. 623 (bearing date of September 24,
2014).)

contribute to severity of [Plaintiff's] symptoms and function limitations per his RFC which relies heavily on patient's report. — given little weight as mental health not his area of expertise." (Id.) On the physical side, the state agency detailed Dr. Hensel's September 2014 treatment notes, as follows: "9/19/14 cc chronic pain syndrome — [Dr. Hensel] confirms it is a chronic condition that she needs to deal with it [sic], home meds not increased[.] P[hysical Examination]: marked tenderness left low back; she remains functional with pain meds, gait mildly antalgic, mostly normal." (Tr. 156.) It then explained that the "9/24/14 Opinion of [Dr.] Hensel is not given great weight as reserved for the [C]ommissioner and objective evidence does not support noted limitations." (Tr. 162.)

Having overlooked these explanations, Plaintiff does not identify any deficiency with the reasons that the state agency provided for discounting the opinions of Dr. Hensel and Dr. Bobbitt. (See Pl.'s Mem. (Doc. 11) at 14-16.) Moreover, rather than being "contradicted by all other evidence in the record," (id. at 16), substantial evidence supports the state agency's (and ALJ's) assessment of the opinions of Dr. Bobbitt and Dr. Hensel, as discussed above. Accordingly, Plaintiff has not established that the ALJ erred in affording the March 2015 state agency opinion "great weight." (Tr. 26.)

### 2. **Plaintiff's Testimony**

Plaintiff next faults the ALJ's assessment of Plaintiff's symptom reporting. (See Pl.'s Mem. (Doc. 11) at 17-21.) The ALJ must employ a two-step process in evaluating a claimant's statements regarding her symptoms. See Social Security Ruling 16-3p, Titles II and XVI:  Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *3 (Oct. 25, 2017) (the "SSR 16-3p"); see also 20 C.F.R. § 404.1529. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3. If, as here, the ALJ finds that the claimant satisfies this step, (see Tr. 27), the analysis then turns to an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which those symptoms affect her ability to work. See SSR 16-3p, 2017 WL 5180304, at *3. In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. at *4. In this case, Plaintiff fell short at the second step, as the ALJ concluded that

"[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision." (Tr. 27.) Plaintiff disputes this assessment. (See Pl.'s Mem. (Doc. 11) at 17-21.)

More specifically, Plaintiff argues that the ALJ erred in finding that the objective evidence did not support "Plaintiff's statements about the effect of her symptoms on her ability to work," (id. at 18). (See also id. at 19 ("The ALJ's reliance on a lack of objective findings failed to be a legally sufficient reason supported by substantial evidence in the record for rejecting Plaintiff's symptom testimony.").) Plaintiff further argues that "[t]he record does not support the ALJ's statement" that "Plaintiff's 'treating physician noted that she responded well to conservative treatment and was stable on medication.'" (Id.) Finally, Plaintiff criticizes the ALJ's assessment of her daily activities. (See id. at 19-21.) These contentions fail to justify remand.

First, as previously noted, the objective medical evidence reflects that Plaintiff remained stable and functioning on medication with repeatedly normal objective results, including for her gait and leg strength. (See, e.g., Tr. 525, 531, 538, 541, 597, 601, 613, 643, 644, 652, 657, 659, 661, 663, 667,

668.) Second, substantial evidence supports the ALJ's characterization of Dr. Hensel's medical records. For instance, records reflect that a few months prior to her alleged onset date, Plaintiff declined both physical therapy for her back pain, (see Tr. 559 ("[Plaintiff] is not open to considering physical therapy at this time")), and counseling, (see id. (noting that, even after "[d]iscuss[ing] the relationship between mood and pain," Plaintiff "decline[d] psychology referral for management of mood with chronic pain and stress"); Tr. 562 ("[Plaintiff d]eclines both coun[se]ling and antidepressants.")), relying instead on (1) pain medications, which "improve[d]" her pain, (Tr. 483), kept her functioning, (see, e.g., Tr. 643, 659), and allowed her to remain active, (Tr. 657), and (2) heat, (see, e.g., Tr. 483 ("Pain improves with heat, medications."), Tr. 583 ("Alleviating factors include sitting in a hot bathtub, heating pads [and] pain medications.")). (See also, e.g., Tr. 41, 43, 297.)[10] Records further reflect that, using just these treatments, Plaintiff

---

[10] As such, Plaintiff's treatment history stands in stark contrast to the "extensive treatment" in Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017), upon which Plaintiff relies, (see Pl.'s Mem. (Doc. 11) at 12), which involved, inter alia, "multiple surgeries, one of which required removal of [the plaintiff's] first left rib to alleviate pain," as well as "lumbar epidural injection, two supraspinatus nerve blocks, and a radiofrequency ablation of [the plaintiff's] supraspinatus nerve," Lewis, 858 F.3d at 869.

experienced improvements during the relevant period. (See, e.g., Tr. 597, 657, 659, 667.) This objective evidence supports the ALJ's discounting of Plaintiff's symptom reporting. See, e.g., Sharp v. Colvin, 660 F. App'x 251, 259 (4th Cir. 2016) (finding that substantial evidence supported the ALJ's discounting of the plaintiff's symptom reporting where "the ALJ concluded that [the plaintiff's] statements about the extent of her limitations were not fully supported by objective medical evidence"); Johnson, 434 F.3d at 658 (affirming the ALJ's decision to discredit the plaintiff's testimony regarding symptom severity where, inter alia, the testimony "[wa]s not supported by any objective medical evidence").

Finally, substantial evidence supports the ALJ's determination that Plaintiff's description of her daily activities remained inconsistent with her reported symptoms. As an initial matter, the record reflects that Plaintiff engaged in a more extensive range of daily activities than she acknowledges in her Memorandum. (Cf., e.g., Tr. 297-01, 591, with Pl.'s Mem. (Doc. 11) at 20.) Second, although Plaintiff asserts that the "ALJ did not explain which of these activities he believed to be inconsistent with any of Plaintiff's allegations," (Pl.'s Mem. (Doc. 11) at 19), he did specify that Plaintiff's ability to "provide care for family pets, prepare meals, and carry out light household chores occasionally," (Tr. 27), belied her

symptom reporting. Further, substantial evidence supports the ALJ's determination that Plaintiff's symptom reporting was not entirely consistent with the record.[11] As noted above, Plaintiff reported that she could engage in a variety of daily activities, including various household chores, such as preparing two meals each day, cleaning the house, and doing laundry, as well as personal grooming, watching television, engaging in activities on the Internet, driving, grocery shopping, feeding and walking her dog, and visiting with friends and family. She further reported that she "go[es] outside[ a]lmost everyday," (Tr. 300), and the medical reports reflect her January 2016 intent to "start exercising," (Tr. 657), as well as the fact that (in 2012) she helped a friend move, (Tr. 562). These activities likewise provide "substantial evidence" for the ALJ's finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent," (Tr. 27), with the record. See, e.g., Johnson, 434 F.3d at 658 (upholding finding that the plaintiff's "complaints of pain [were] inconsistent with her testimony of her routine activities," which included, inter alia, "watch[ing]

---

[11] In this regard, it bears noting that, at the hearing, Plaintiff maintained that she "write[s] with [her left] hand so [she] ha[s] no grip with th[at] hand because of the accident," (Tr. 41), but subsequently stated that she was "right handed," (Tr. 47).

television, clean[ing] the house, wash[ing] clothes, visit[ing] relatives, feed[ing] the family pets, cook[ing], [and] manag[ing] her household finances," explaining that "[t]he ALJ logically reasoned that the ability to engage in such activities is inconsistent with [the plaintiff's] statements of excruciating pain and her inability to perform such regular movements like bending, sitting, walking, grasping, or maintaining attention").

Under the circumstances, the ALJ did not err in finding Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 27.) The court will therefore reject Plaintiff's final assignment of error.

III. <u>CONCLUSION</u>

Plaintiff has established no grounds for relief.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, that Plaintiff's Motion for Judgment Reversing and Modifying the Decision of the Commissioner, (Doc. 10), is **DENIED**, that Defendant's Motion for Judgment on the Pleadings, (Doc. 13), is **GRANTED**, and that this action is **DISMISSED WITH PREJUDICE.**

A Judgment dismissing this action will be entered contemporaneously with this Order.

This the 26th day of March, 2019.

_____
United States District Judge